**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Aldi Caban, ) | |
| ) | |
| Petitioner, ) | |
| ) | Criminal Action No.: 2:06-1208-PMD |
| v. ) | |
| ) | |
| United States of America. ) | **ORDER** |
| _____) | |

On September 10, 2007, a jury found Petitioner Aldi Caban ("Petitioner") guilty of three counts: conspiring to possess with intent to distribute 50 grams or more of a mixture or substance containing methamphetamine; illegally possessing a short-barreled rifle; and being a felon in possession of a firearm. As a result, Petitioner received a 360 month sentence, which was affirmed by the Fourth Circuit. Petitioner now moves the court, pursuant to 28 U.S.C. § 2255, to vacate his sentence on thirteen separate grounds, all of which allege that he received ineffective assistance of counsel either at trial, at sentencing, or on appeal. The Government has moved the court to grant it summary judgment as to all of Petitioner's claims.

## **LEGAL STANDARD FOR SUMMARY JUDGMENT**

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). The court remains mindful that Petitioner appears before the court *pro se*, and

therefore, his pleadings are accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97 (1976). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

## ANALYSIS OF PETITIONER'S CLAIMS

To establish ineffective assistance of counsel, Petitioner must show that his counsel's performance was both objectively unreasonable and prejudicial to his defense. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *United States v. Tucker*, __ F.3d __, 2010 U.S. App. LEXIS 8999, *2–3 (4th Cir. 2010). He can satisfy the first prong by demonstrating that his counsel's performance fell below an objective standard of reasonableness under "prevailing professional norms." *Strickland*, 466 U.S. at 688. He can satisfy the second prong by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

First, Petitioner claims his trial counsel was ineffective for failing "to seek dismissal of count one of the indictment when the Government failed to prove that he "manufactured" methamphetamine. Count One of the indictment stated in relevant part:

> Beginning at a time unknown to the Grand Jury, but beginning at least in or about July, 2005, and continuing thereafter, to and including the date of this Indictment, In the District of South Carolina and elsewhere, the Defendants . . . **ALDI CABAN** knowingly and intentionally did combine, conspire and agree together and have tacit understanding with each other and others, both known and unknown to the Grand Jury, to knowingly, intentionally and unlawfully ***manufacture, possess with intent to distribute and distribute*** 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine . . . .

Because this count included language that charged Petitioner with "manufacturing" methamphetamine and the Government did not produce evidence that he manufactured the

2

controlled substance, Petitioner believes his trial counsel should have moved to have that count in the indictment dismissed. In response, the Government argues that, although the language of the indictment does charge Petitioner with "manufacturing, possessing with the intent to distribute, *and* distributing a mixture of methamphetamine, it only needed to prove that Petitioner conspired to commit one of those acts in order for the jury to find him guilty of Count One. Therefore, his trial counsel did not offer ineffective assistance by failing to ask the court to dismiss count one. After considering Petitioner's claim, the court agrees with the Government, as it only needed to prove one of the listed acts. The Government is correct on this point because, as a general rule, "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged" *Turner v. United States*, 396 U.S. 398, 420(1970); *see also United States v. Brandon*, 298 F.3d 307, 314 (4th Cir. 2002) ("Where a statute specifies several alternative ways in which an offense can be committed, the indictment may allege the several ways in the conjunctive, and a conviction thereon will stand if proof of one or more of the means of commission is sufficient.").

During the trial, the Government offered the testimony of three witnesses, all of which testified that they participated in drug transactions with Petitioner. Relying on their testimony, the jury could have found that Petitioner possessed and distributed methamphetamine; therefore, his trial counsel's decision not to move to dismiss Count One simply because the Government did not produce evidence that Petitioner manufactured methamphetamine was not both objectively unreasonable and prejudicial to his defense. In his reply, Petitioner conveniently argues for the first time that, if his trial counsel was not ineffective for failing to move to have Count One dismissed, then he was ineffective for failing to request an adequate jury instruction. The court disagrees and

finds that Petitioner cannot attempt to amend his petition in his reply brief. Therefore the court dismisses Petitioner's first claim.

Petitioner's second claim relates to the second charge he was found guilty of at trial. Count Four of the indictment accused Petitioner of possessing a short-barreled rifle, which was not registered to him in the National Firearms Registration and Transfer record, in violation of 26 U.S.C. §§ 5841, 5845(a), 5861(d), and 5871. In his second claim, Petitioner claims that his trial counsel was ineffective for failing to call as an expert witness a representative from the manufacturer of the short-barreled rifle to prove that the firearm was actually manufactured and sold as a pistol and had not been modified or shortened from its original length as a pistol. At trial, ATF Special Agent Michael Loudermilk testified that he interviewed Petitioner after his arrest, and Petitioner admitted that he obtained the firearm as a handgun, and not a rile, but that he modified the firearm by putting a stock on it so that it could be fired from the shoulder. Also at trial, ATF Special Agent Mark Kelly testified that he examined the firearm and found the barrel to be eight and a half inches long, while a conventional rifle has to have a barrel in excess of sixteen inches to avoid being subject to restrictions under the National Firearms Act. Agent Kelly further testified that the firearm in question could have been sold as a pistol with an eight and a half inch barrel, but with the addition of a shoulder stock, it became a short-barreled rifle subject to registration.

Based on this testimony, the Government contends Petitioner has not shown that his trial counsel was ineffective for failing to call as an expert witness a representative from the firearm's manufacturer. This is because the testimony presented at trial supported the argument Petitioner now makes—he originally obtained the firearm in the form of a pistol and it's barrel was not shortened. After considering the arguments, the court agrees with the Government because not only did the jury

hear testimony similar to what a representative from the firearm's manufacturer would have provided, but the testimony would not have helped Petitioner's defense. Title 18 U.S.C. § 921(a)(8) defines a "short-barreled rifle" as, "*a rifle having one or more barrels less than sixteen inches in length* and any weapon made from a rifle (whether by alteration, modification, or otherwise) if such weapon, as modified, has an overall length of less than twenty-six inches. (emphasis added). "Rifle" is defined as "a weapon designed *or redesigned*, made *or remade*, and *intended to be fired from the shoulder* and designed or redesigned and made or remade to use the energy of an explosive to fire only a single projectile through a rifled bore for each single pull of the trigger." 18 U.S.C. § 921(a)(7) (emphasis added). Because Petitioner admitted to Agent Loudermilk that he put a stock on the firearm so that it could be fired from the shoulder, and because the firearm had a barrel less than sixteen inches in length, the firearm satisfied the definition of "short-barreled rifle" as provided in the United States Code. Therefore, Petitioner's argument that the Government "failed to prove that the [firearm] started out as a rifle . .. or that the addition of a short stock on the pistol changed the pistol to a rifle," fails. (Pet. Reply 5.) Based on this evidence, the court finds that Petitioner's trial counsel's performance was not objectively unreasonable in light of Petitioner's own admissions, nor was the failure call a representative from the firearm's manufacturer as an expert witness prejudicial to Petitioner's defense.

For his third and fourth claims, Petitioner moves the court to set aside his sentence because his trial counsel was ineffective for failing to file a timely motion for discovery and for failing to file a motion for *Jencks* material, which he believes denied him specific evidence to determine whether the government withheld any material evidence he could have used for impeachment purposes. Moreover, Petitioner believes if his trial counsel had filed a motion for discovery, it would have

5

"forced the [Government] to produce the signed statements of the witnesses and [show] that ATF Agent Loudermilk testified falsely at the Grand Jury deceitfully [to] obtain the Indictment." (Pet. Reply 6.) The Government contends that Petitioner's trial counsel did not provide ineffective assistance in this respect because he did in fact file a discovery motion in response to which the Government provided all discoverable materials including *Jencks* materials. The Government also provided the affidavit of Petitioner's trial counsel, in which he attests to the fact that the Government "produced all evidence in their possession and there were certainly no surprises in regards to evidence . . . ." (Locklair Aff. ¶ 3.) After considering the evidence, the court finds that Petitioner's trail counsel did not offer ineffective assistance with respect to discovery matters in Petitioner's case, as there is no dispute that his trial counsel did file a motion for discovery and, aside from Petitioner's speculative allegations, nothing supports Petitioner's claim that material evidence was not provided. Therefore, the court dismisses Petitioner's third and fourth claims.

In his fifth claim, Petitioner argues that his trial counsel provided ineffective assistance by failing to move the court to suppress from evidence certain statements made by his alleged co-conspirators after they were arrested, which allegedly implicated Petitioner in the case. Although Petitioner fails to explain which statements he is referring to, he supports his argument by citing to *United States v. Blackshire*, 538 F.2d 569, 571 (4th Cir. 1976), in which the Fourth Circuit found that a statement made by a coconspirator to police after her arrest was not admissible against the defendant because the post-arrest statement was not made in furtherance of the conspiracy or during its continuation. In response, the Government argues that *Blackshire* is inapplicable to this matter because, during Petitioner's trial, the Government never introduced any post-arrest "statements" of any coconspirator. Instead, the Government called as witnesses certain defendants who were also

6

named in the same indictment as Petitioner, as well as another witness who was named in a separate indictment, all of whom testified as to their personal knowledge relating to the charges against Petitioner. Based on this record, Petitioner's argument is without merit, as the facts of *Blackshire* are distinguishable from Petitioner's trial, and he has not offered any ground by which his lawyer could have moved to suppress whatever statements he seeks to have suppressed. The alleged coconspirators testified at Petitioner's trial based on their own personal knowledge, and Petitioner had a chance to cross-examine them at that time. Therefore, the court finds that Petitioner's trial counsel did not offer ineffective assistance by failing to move to suppress from evidence any statements made by his alleged coconspirators, and it dismisses this claim.

In his sixth claim, Petitioner argues that his trial counsel provided ineffective assistance by failing to cite correct facts and relevant law in his motion to suppress from evidence statements made by Petitioner to ATF Special Agent Loudermilk. In his petition, Petitioner now explains to the court what "really happened" and cites to two United States Supreme Court cases to show that his statements should have been suppressed had his trial counsel done his job correctly. In response, the Government provides the affidavit of Petitioner's trial counsel, in which he attests that the facts he stated in his motion to suppress were those provided by Petitioner, and if those facts were incorrect, Petitioner never indicated to him that they were. (Locklair Aff. ¶ 5.) After considering the parties' arguments, the court finds no merit in this claim. The court held an evidentiary hearing in which the Government produced the testimony of the officers on which it relied to defeat Petitioner's motion to suppress evidence, and at that hearing, Petitioner had every opportunity to cross-examine the Government's witnesses and make his own case. Moreover, the court applied the correct law to

7

Petitioner's case. Therefore, the court does not find that Petitioner's trial counsel provided ineffective assistance through his motion to suppress, and it dismisses this claim.

In his seventh claim, Petitioner claims that his trial counsel was ineffective for failing to file a timely motion for sequestration of Government witnesses. In his petition, Petitioner does not indicate which testimony he believes was shaped by the testimony of another witness or how it specifically prejudiced him. In response, the Government argues that this claim should be dismissed because it amounts to nothing more than a bare assertion and because it cannot think of any testimony from any witness that overlapped the testimony of another witness involving controverted and material facts. Since Petitioner has failed to allege anything more than a bare assertion that the Government witnesses should have been sequestered, the court dismisses this claim and finds that Petitioner's trial counsel did not provide ineffective assistance by failing to move to have the witnesses sequestered. In his eighth claim, Petitioner contends that his trial counsel was ineffective by commenting during his opening argument that Petitioner's defense in the case is that he didn't have a defense, but that the prosecution must prove its case. In response, the Government provides the affidavit of Petitioner's trial counsel, in which he attests that he crafted his opening statement based on the strategy he opted to employ at trial. (Locklair Aff. ¶ 7.) Because the jury was charged on the law concerning Petitioner's Fifth Amendment right against self-incrimination and the Government's burden of proof in the case, the court finds that Petitioner's trial counsel's opening statement did not actually prejudice Petitioner, as the jury could only find Petitioner guilty of the charges based on the evidence admitted at trial. Therefore the court also dismisses this claim.

For a ninth claim, Petitioner argues that his trial counsel provided ineffective assistance of counsel by making false statements to the jury during his closing argument. Specifically, Plaintiff

complains of his trial counsel's statement, "I don't want weapons like this in my neighborhood and around my kids any more than you do, but the question isn't whether my client/defendant possessed this gun, but whether he possessed it on the day in question." Petitioner claims this statement is false for several reasons. First, Petitioner contends that his trial counsel does not have any children; second, he contends that the firearm was not found in a neighborhood or near a school and, instead, was found in the trunk of a vehicle unoccupied by him. Lastly, he contends that the firearm presented no danger to any children or any community and that the police report does not indicate that the firearm was found in an area by which it could have been a threat to children or the community. In response, the Government argues that this statement does not amount to ineffective assistance of counsel because the jury had already seen the firearm when it was admitted into evidence, and his trial counsel was only trying to "diffuse" any prejudice that a juror may have harbored against an individual solely for possessing such a dangerous weapon. The court agrees with the Government on this claim.

It's clear from its context that Petitioner's trial counsel used the statement as an expression—rather than a statement of fact—to communicate to the jury Petitioner's shared recognition of the dangerous nature of the short-barreled rifle. It also made the jury aware of the fact that, simply because the jurors may be wary of firearms like the short-barreled rifle admitted into evidence at trail, that dislike, by itself, does not mean that Petitioner was guilty of the offense charged. The court also agrees with the Government's argument that Petitioner has failed to show how this statement prejudiced his case. At trial, the jury did not have to find that his trial counsel had children or that Petitioner possessed the firearm near a neighborhood or a school; it merely had to find that he possessed the firearm, which it reasonably could have found based on the evidence

9

presented to it. Therefore, the court finds that Petitioner's trial counsel was not ineffective for making this statement during closing arguments, and it dismisses this claim.

For his tenth and eleventh claims, Petitioner argues that his trial counsel offered ineffective assistance by failing to move the court to require the Government to disclose whether or not it intended to use at trial evidence of Petitioner's prior convictions pursuant to Federal Rule of Evidence 404(b) and for failing to move for a mistrial after the Government allegedly failed to provide notice that it would use Petitioner's prior convictions against him at trial. These claims are without merit. A review of the record in this case reveals that Petitioner's trial counsel did in fact file a motion for the disclosure of the Government's intent to use evidence of other crimes, wrongs, or acts pursuant to Rule 404(b), and prior to Petitioner's trial, the Government filed a written notice of its intention to introduce in its case in chief evidence relating to Petitioner's two previous drug convictions. Therefore, the court dismisses these claims.

In his twelfth claim, Petitioner argues that his sentence should be set aside because his sentencing counsel provided ineffective assistance by failing to argue that Petitioner's prior controlled substance conviction pursuant to the uniformed code of military justice was ineligible to meet the career offender definition for qualification pursuant to U.S.S.G. § 4B1.2. Because U.S.S.G. § 4B1.2 defines "controlled substance offense" as "an offense under *federal or state* law, punishable by imprisonment for a term exceeding one year . . . ," Petitioner argues that his convictions under "military law" cannot be counted as a controlled substance offense against him. Contrary to Petitioner's assertion, U.S.S.G. § 4A1.2(g) provides, "Sentences resulting from military offenses are counted if imposed by a general or special court martial. Sentences imposed by a summary court martial or Article 15 proceeding are not counted." In Petitioner's case, his presentence investigation

report reveals that in 1996 Petitioner was convicted of distribution of marijuana, attempted possession of cocaine, use of methamphetamine in South Carolina, and use of cocaine in North Carolina by a general court martial, and Petitioner does not dispute this fact. Therefore, Petitioner's argument that his convictions under "military law" should not be counted as a predicate offense is without merit, and the court dismisses this claim.

In his thirteenth and final claim, Petitioner asserts that his appellate counsel offered ineffective assistance by failing to argue on appeal that the search of his father's car was unconstitutional and by failing to seek a stay of Petitioner's appeal until the Supreme Court decided *Arizona v. Gant*, 129 S. Ct. 1710 (2009). In his case, Petitioner was arrested pursuant to an arrest warrant after being located in a vehicle. He argues that he was already handcuffed and placed in the back of a patrol vehicle before the officers found the firearm in the vehicle. According to the Government, because Petitioner was the sole occupant of that vehicle, the police officers had the vehicle towed and inventoried pursuant to the policy of the North Charleston Police Department. It was during this inventory of the vehicle that the firearm was located in the glove box, and because it was not found during a search incident to a lawful arrest, the facts surrounding the search of vehicle are distinguishable from those present in *Arizona v. Gant*. Notwithstanding the issue of whether or not Petitioner even has standing to assert such a claim, and assuming the issue was properly preserved for appeal, the court agrees with the Government. *Arizona v. Gant* did not render inventory searches unconstitutional, and nothing in Petitioner's argument shows that there was a colorable basis to suppress the firearm from evidence. Therefore, the court finds that Petitioner's appellate counsel did not offer ineffective assistance by failing to raise this issue on appeal, and the court dismisses this claim.

## CONCLUSION

Based on the foregoing, it is **ORDERED** that the Government's motion for summary judgment is **GRANTED** and Petitioner's motion is hereby **DISMISSED**. It is further **ORDERED** that a certificate of appealabiltiy is **DENIED** because Petitioner has failed to make a substantial showing of the denial of a constitutional right.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**June 2, 2010**
**Charleston, South Carolina**